JAMES D. FREEMAN
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Telephone: (303) 844-1489
Email: james.freeman2@usdoj.gov

*Attorney for Plaintiff United States of America*

MARINA V. THOMAS
Assistant Utah Attorney General
SEAN D. REYES
Utah Attorney General
195 North 1950 West P.O. Box 140873
Salt Lake City, Utah 84114-0873
Telephone: (365) 414-0801
Email: marinathomas@agutah.gov

*Attorneys for Plaintiff State of Utah*

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF UTAH, on behalf of the UTAH DEPARTMENT OF ENVIRONMENTAL QUALITY, UTAH DIVISION OF AIR QUALITY,<br><br>    Plaintiffs,<br><br>v.<br><br>EP Energy E&P Company, L.P.,<br><br>    Defendant. | Case No. 2:22-cv-00225-DBB<br><br>**COMPLAINT** |

Plaintiffs, the United States of America, by authority of the Attorney General of the

United States and acting at the request of the Administrator of the United States Environmental

Protection Agency ("EPA"), and the State of Utah, on behalf of the Utah Department of Environmental Quality ("UDEQ"), Utah Division of Air Quality ("UDAQ"), represented by the Utah Attorney General's Office under Section 19-2-117(3) of the Utah Code, file this Complaint and allege as follows:

## NATURE OF ACTION

1.      This is a civil action against EP Energy E&P Company, L.P. ("EP Energy") pursuant to Section 113(b) of the Clean Air Act (the "Act"), 42 U.S.C. § 7413(b), and Section 19-2-115 of the Utah Air Conservation Act (the "Utah Act"), Utah Code Ann. § 19-2-115.

2.      Plaintiffs seek civil penalties for violations of Section 111 of the Act, 42 U.S.C. § 7411, and its implementing regulations at 40 C.F.R Part 60, Subparts OOOO and OOOOa; the Utah Act and its implementing regulations at Utah Administrative Code r. R307-101-1 *et seq.*; and Utah's federally approved State Implementation Plan ("SIP"), for unlawful emissions of volatile organic compounds ("VOCs") from storage vessels and their associated vapor control systems that were part of EP Energy's oil and natural gas production systems in the Uinta Basin.

3.      EP Energy's failure to comply with the requirements of the Act and its implementing regulations and the Utah Act and its implementing regulations at these facilities resulted in significant excess VOC emissions, a precursor to ground-level ozone. EP Energy operates in an area where air quality does not meet the National Ambient Air Quality Standards ("NAAQS") for ground-level ozone. EP Energy's unlawful emissions contributed to this exceedance of the NAAQS.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the claims arising under the Clean Air Act pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

5.      This Court has supplemental jurisdiction over UDAQ's state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this District under Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because the violations that are the basis of this Complaint occurred in this District, and the facilities at issue were operated by EP Energy in this District.

## NOTICES

7.      EPA and UDAQ issued EP Energy a Notice of Violation on March 20, 2020.

8.      Notice of this action has been given to the appropriate air pollution control agency in the State of Utah as required by Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1).

## DEFENDANT

9.      EP Energy is incorporated in the State of Delaware and at all times relevant to this Complaint was doing business within the exterior boundaries of the Uintah and Ouray Indian Reservation and in the State of Utah.

10.      EP Energy's business in Utah included the extraction and production of natural gas and oil.

11.      EP Energy is a "person" as defined in Section 302(e) of the Act, 42 U.S.C. § 7602(e) and Section 19-1-103 of the Utah Code, Utah Code Ann. § 19-1-103(4).

## FACILITIES

12.     EP Energy has owned and operated the oil and natural gas production facilities that are the subject of the violations alleged in this Complaint at least from the dates Plaintiffs inspected the facilities, as identified in this Complaint.

13.     EP Energy is the "owner and operator" of the oil and natural gas production facilities within the meaning of Section 111(a)(5) of the Act, 42 U.S.C. §§ 7411(a)(5) and 7412(a)(9) and Utah Administrative Code r. R307-101-2.

14.     These production facilities include wells that produce a mixture of oil, natural gas, and saltwater, the latter often referred to as produced water. This mixture flows up the well under pressure to the well-head at the surface and then to a device called a three-phase heater treater separator.

15.      The purpose of a separator is to separate the effluent from the well into its constituent parts: hydrocarbon liquids, natural gas, and produced water.

16.     The oil and produced water, once separated from the natural gas, are temporarily held under pressure in the separator until the liquids reach a set level, at which point the valves open and the liquids flow into storage vessels kept at or near atmospheric pressure.

17.     Storage vessels are commonly referred to as storage tanks.

18.     When oil is transferred from a separator to an atmospheric storage vessel, the pressure of the oil drops, and some of the hydrocarbons in the oil, including VOCs and hazardous air pollutants ("HAPs"), vaporize into a gaseous state in a process commonly known as "flashing." After flashing occurs, the liquids continue to emit vapors due to liquid level changes and temperature fluctuations. The additional release of gas due to temperature changes occurring while the oil is stored in the storage vessel is known as "breathing" losses. Breathing

losses are also known as "standing" losses. Vapors are also emitted due to "working" losses, which refers to emissions during the time period when liquids are being loaded into, or out of, the storage vessel. Flashing, working, and standing losses must be managed to prevent over-pressurization and the release of uncontrolled emissions into the atmosphere.

19.     The tops of the hydrocarbon liquid storage tanks have openings called "thief hatches." Thief hatches are equipped with gaskets that should seal tight when the thief hatch is closed.

20.     Thief hatches serve three primary purposes: (1) they provide access to the contents of the tank for taking samples and measuring the level of the tank (known as "gauging"); (2) they provide a means of relieving pressure from the tank to prevent over-pressurization; and (3) they eliminate excessive vacuum buildup within the tanks.

21.     To prevent over-pressurization of the storage vessels, thief hatches are designed to open (or vent) when the pressure inside the vessel exceeds the pressure setting of the thief hatch. Owners and operators are required to design their facilities to ensure that thief hatches do not release emissions to the atmosphere during normal operations. Emissions due to flashing, working, or standing losses are considered normal operations.

22.     Thief hatches may emit vapors to the atmosphere if the production facility is not properly designed, if the thief hatch gaskets are not maintained, and/or if the thief hatches do not seal properly.

23.     In addition to thief hatches, the storage tanks may also be equipped with pressure relief valves ("PRVs"), which are also designed to vent at set pressures to prevent over-pressurization of the storage vessels. Similar to the requirements for thief hatches, owners and

operators are required to ensure that PRVs do not release emissions to the atmosphere during normal operations.

24.     Thief hatches and PRVs are collectively known as pressure relief devices ("PRDs"). A properly maintained PRD is equipped with a weighted mechanism to ensure that its lid remains properly seated and sealed under normal operating conditions including such times when flashing, breathing/standing, or working losses may be generated.

25.     Vapors from storage vessels are captured and controlled through a series of pipes or vent lines, connections, fittings, and PRDs, collectively called a vapor control system or closed vent system. The vapor control system routes vapors to an emission control device, such as a combustor, or to process by way of a vapor recovery unit.

26.     A properly designed and well-maintained vapor control system ensures that VOC emissions are controlled by routing VOC vapors from the oil storage vessel through a closed vent system to a combustion device where VOC emissions are burned and destroyed at certain rate efficiencies. Alternatively, VOC emissions are routed to a process by way of a vapor recovery unit where vapors are recycled, recovered, or consumed as a product that does not vent to the atmosphere.

27.     An insufficiently designed or poorly maintained or operated vapor control system may result in VOC emissions from the vapor control system directly to the atmosphere during normal operation. For example, PRDs with seals that are worn, not properly seated, or improperly maintained may result in the vapor control system releasing VOC emissions directly to the atmosphere.

## STATUTORY AND REGULATORY BACKGROUND

28.     As set forth in Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1), the purpose

of the Act is to protect and enhance the quality of the nation's air resources, so as to promote the

public health and welfare and the productive capacity of its population.

29.     As set forth in Section 19-2-101 of the Utah Act, Utah Code Ann. § 19-2-101(2),

the purpose of the Utah Act is to:

> achieve and maintain levels of air quality which will protect human health and
> safety, and to the greatest degree practicable, prevent injury to plant and animal life
> and property, foster the comfort and convenience of the people, promote the
> economic and social development of this state, and facilitate the enjoyment of the
> natural attractions of this state.

### New Source Performance Standards

30.     Section 111(b) of the Act, 42 U.S.C. § 7411(b), authorizes EPA to promulgate

standards of performance applicable to "new sources" within categories of sources that cause

"air pollution which may reasonably be anticipated to endanger public health or welfare." These

regulations are referred to as New Source Performance Standards ("NSPS").

31.     A "new source" is any stationary source, the construction or modification of

which is commenced after the promulgation of the standards of performance that will apply to

such source. 42 U.S.C. § 7411(a)(2).

32.     A "stationary source" is a building, structure, facility, or installation that emits or

may emit any air pollutant. 42 U.S.C. § 7411(a)(3).

33.     In 1979, EPA listed "Crude Oil and Natural Gas Production" as a source category

that contributes significantly to air pollution and for which standards of performance would be

established. 44 Fed. Reg. 49,222 (Aug. 21, 1979).

34.     It is unlawful for owners or operators of any new source to operate in violation of NSPS after the standards have gone into effect. 42 U.S.C. § 7411(e).

35.     NSPS are legally enforceable in Utah through the federal delegation to the State of Utah. *See* Utah Admin. Code r. R307-101-1; 40 C.F.R. § 60.4(b)(46); 67 Fed. Reg. 58,998 (Sept. 19, 2002); 79 Fed. Reg. 60,993 (Oct. 9, 2014). NSPS have been incorporated by reference into the Utah regulations in Utah Administrative Code implementing the Utah Act. *See* Utah Admin. Code r. R307-210-1.

### 40 C.F.R. Part 60, Subpart OOOO

36.     In 2012, EPA promulgated NSPS regulations for the crude oil and natural gas production, transmission, and distribution industry sector. 77 Fed. Reg. 49,542 (Aug. 16, 2012). These standards were codified at 40 C.F.R. Part 60, Subpart OOOO ("NSPS Subpart OOOO"). 40 C.F.R. § 60.5360.

37.     NSPS Subpart OOOO applies to onshore affected facilities for which owners or operators commence construction, modification, or reconstruction after August 23, 2011, and on or before September 18, 2015. 40 C.F.R. § 60.5365.

38.     Among the affected facilities subject to NSPS Subpart OOOO are "storage vessel affected facilities." 40 C.F.R. § 60.5365(e). A "storage vessel affected facility" is a single storage vessel with the potential for VOC emissions equal to or greater than 6 tons per year ("tpy") as determined according to 40 C.F.R. § 60.5365(e). NSPS Subpart OOOO defines a "storage vessel" as a tank or other vessel that contains an accumulation of crude oil, condensate, intermediate oil, or produced water, and that is constructed primarily of non-earthen materials (such as wood, concrete, steel, fiberglass, or plastic) which provide structural support. 40 C.F.R. § 60.5430.

39.     NSPS Subpart OOOO requires "[a]t all times, including periods of startup, shutdown, and malfunction, owners and operators shall maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions." 40 C.F.R. § 60.5370(b).

40.     Subpart OOOO sets forth two classifications of storage vessels: (i) those that began to be constructed, reconstructed, or modified after August 23, 2011, and on or before April 12, 2013 ("Group 1 storage vessels"); and (ii) those that began to be constructed, reconstructed, or modified after April 12, 2013 ("Group 2 storage vessels"). 40 C.F.R. § 60.5430.

41.     The potential for VOC emissions from a storage vessel must be calculated using a generally accepted model or calculation methodology, based on the maximum average daily throughput determined for a 30-day period of production prior to the applicable emission determination deadline. The potential for VOC emissions from a storage vessel may take into account requirements under a legally and practically enforceable limit in an operating permit or other requirements under Federal, State, local or tribal authority. 40 C.F.R. § 60.5365(e).

42.     For Group 1, owners and operators were required to submit a notification to EPA, identifying each storage vessel affected facility in an initial annual report by July 14, 2015. The initial report must include documentation of the VOC emission rate determination and records of deviations in cases where the storage vessel affected facility was not operated in compliance with the requirements specified in 40 C.F.R. §§ 60.5395, 60.5411, 60.5412, and 60.5413, as applicable. 40 C.F.R. §§ 60.5410(h)(4), 60.5420(b), 60.5420(c)(5)(iii).

43.     For Group 2 storage vessels, owners and operators must demonstrate initial compliance by April 15, 2014, or within 60 days after startup, whichever is later. Within 90 days after the end of the initial compliance period, owners and operators must submit an initial annual

report to EPA that identifies the storage vessel affected facilities constructed, modified, or reconstructed during the reporting period and includes documentation of the VOC emission rate determination and records of deviations in cases where the storage vessel affected facility was not operated in compliance with the requirements specified in 40 C.F.R. §§ 60.5395, 60.5411, 60.5412, and 60.5413, as applicable. 40 C.F.R. §§ 60.5410(h)(4), 60.5420(b), 60.5420(c)(5)(iii).

44.     A storage vessel affected facility that subsequently has its potential for VOC emissions decrease to less than 6 tpy shall remain an affected facility under this subpart. 40 C.F.R. § 60.5365(e)(2).

45.     After the initial annual report, owners and operators must submit subsequent annual reports to EPA identifying the storage vessel affected facilities constructed, modified, or reconstructed during the reporting period. Annual reports must include documentation of the VOC emission rate determination and records of deviations in cases where the storage vessel affected facility was not operated in compliance with the requirements specified in 40 C.F.R. §§ 60.5395, 60.5411, 60.5412, and 60.5413, as applicable. 40 C.F.R. §§ 60.5420(b)(6), 60.5420(c)(5)(iii).

### 40 C.F.R. Part 60, Subpart OOOOa

46.     In 2016, EPA made amendments to the 2012 NSPS. 81 Fed. Reg. 35,898 (June 3, 2016). These standards were codified at 40 C.F.R. Part 60, Subpart OOOOa ("NSPS Subpart OOOOa"). 40 C.F.R. § 60.5360a.

47.     NSPS Subpart OOOOa applies to affected facilities for which owners or operators commence construction, modification, or reconstruction after September 18, 2015. 40 C.F.R. § 60.5365a.

48.     Similar to NSPS Subpart OOOO, "storage vessel affected facilities" are among the affected facilities subject to NSPS Subpart OOOOa. 40 C.F.R. § 60.5365a(e). A "storage vessel affected facility" is a single storage vessel with the potential for VOC emissions equal to or greater than 6 tpy as determined according to 40 C.F.R. § 60.5365a(e)(1). The potential for VOC emissions must be calculated using a generally accepted model or calculation methodology, based on the maximum average daily throughput as defined in 40 C.F.R. § 60.5430a, determined for a 30-day period prior to the applicable emissions determination deadline specified in paragraphs (e)(2)(i-)-(ii) of Section 60.5430a. The determination may take into account requirements under a legally and practicably enforceable limit in an operating permit or other requirements established under a Federal, State, local, or tribal authority. 40 C.F.R. § 60.5365a(e)(1).

49.     Owners and operators of storage vessel affected facilities under Subpart OOOOa must demonstrate initial compliance by August 2, 2016, or within 60 days after startup, whichever is later. No later than 90 days after the end of the initial compliance period, owners and operators must submit an initial report to EPA that identifies storage vessel affected facilities constructed, modified, or reconstructed during the reporting period and includes documentation of the VOC emission rate determination according to 40 C.F.R. § 60.5365a(e)(1); records of deviations in cases where the storage vessel affected facility was not operated in compliance with the requirements specified in 40 C.F.R. §§ 60.5395, 60.5411, 60.5412, and 60.5413, as applicable; and a statement that the owner or operator has met the requirements of 40 C.F.R 40 C.F.R. §§ 60.5410a(h)(2)-(3). 40 C.F.R. §§ 60.5410a(h)(1)-(6), 60.5420a(b)(6)(i)-(v).

50.     A storage vessel affected facility that subsequently has its potential for VOC emissions decrease to less than 6 tpy shall remain an affected facility under this subpart. 40 C.F.R. § 60.5365a(e)(4).

### VOC Emissions Control Standards for Storage Vessel Affected Facilities under NSPS Subpart OOOOa

51.     NSPS Subpart OOOOa requires "[a]t all times, including periods of startup, shutdown, and malfunction, owners and operators shall maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions." 40 C.F.R. § 60.5370a(b).

52.     If the owner or operator of a storage vessel affected facility uses a control device to reduce VOC emissions from a storage vessel affected facility, the owner or operator must (a) equip the storage vessel with a cover connected to a closed vent system and (b) route VOC emissions to a control device or process in accordance with the requirements of 40 C.F.R. § 60.5395a(b)(1), specified below:

    a.  The cover must meet the requirements of 40 C.F.R. § 60.5411a(b);

    b.  The closed vent system must meet the requirements of 40 C.F.R. §§ 60.5411a(c) and 60.5411a(d); and

    c.  The control device must meet the requirements of 40 C.F.R. § 60.5412a(c).

### NSPS Subpart OOOOa Cover Requirements

53.     Owners and operators must comply with the following requirements for covers on storage vessel affected facilities under NSPS Subpart OOOOa:

    a.  The cover and all openings on the cover (e.g., access hatches and pressure relief valves) shall form a continuous impermeable barrier over the entire surface area of the liquid in the storage vessel. 40 C.F.R. § 60.5411a(b)(1).

b.   Each cover opening must be secured in a closed, sealed position whenever material is in the unit, except during those times specified in 40 C.F.R. § 60.5411(b)(2)(i)–(iv). 40 C.F.R. § 60.5411a(b)(2).

c.   Each storage vessel thief hatch must be equipped, maintained, and operated with a weighted mechanism or equivalent, to ensure that the lid remains properly seated and sealed under normal operating conditions, including such times when working, standing/breathing, and flash emissions may be generated. The gasket material for the hatch must be selected based on the composition of the fluid in the storage vessel and weather conditions. 40 C.F.R. § 60.5411a(b)(3).

**NSPS Subpart OOOOa Closed Vent System Requirements**

54.   Owners and operators must comply with the following requirements for closed vent systems associated with storage vessel affected facilities under NSPS Subpart OOOOa:

a.   Design the closed vent system to route all gases, vapors, and fumes emitted from the material in the storage vessel to a control device that meets the requirements specified in § 60.5412(c) and (d), or to a process. 40 C.F.R. § 60.5411a(c)(1).

b.   Design and operate a closed vent system with no detectable emissions, as determined using olfactory, visual and auditory ("OVA") inspections. 40 C.F.R. § 60.5411a(c)(2).

**NSPS Subpart OOOOa Control Device Requirements**

55.     Owners and operators must comply with the following requirements for control devices to reduce emissions from storage vessel affected facilities under NSPS Subpart OOOOa:

    a.  Reduce VOC emissions from storage vessel affected facilities by 95% within 60 days of startup. 40 C.F.R. § 60.5395a(a)(2).

    b.  Ensure each enclosed combustion device is maintained in a leak-free condition. 40 C.F.R. §§ 60.5412a(d)(1)(i), 60.5413a(e)(7).

    c.  Install and operate a continuous burning pilot flame. 40 C.F.R. §§ 60.5412a(d)(1)(ii), 60.5413a(e)(2).

    d.  Design and operate a flare in accordance with the requirements of 40 C.F.R. § 60.18. 40 C.F.R. §§ 60.5412a(d)(3), 60.5425a.

    e.  Operate the control device with no visible emissions, except for periods not to exceed a total of one minute during any fifteen-minute period, as determined using EPA Method 22, 40 C.F.R. Part 60, Appendix A. 40 C.F.R. §§ 60.5412a(d)(1)(iii), 60.5413a(e)(3), 60.5417a(h)(1)(ii).

    f.  Operate each control device used to comply with NSPS Subpart OOOOa at all times when gases, vapors, and fumes are vented from storage vessel affected facilities through the closed vent system to the control device. 40 C.F.R. § 60.5412a(d)(4).

**NSPS Subpart OOOOa Initial Compliance Period and Subsequent Reporting Requirements**

56.     For each storage vessel affected facility, owners and operators must demonstrate initial compliance by August 2, 2016, or within 60 days after startup, whichever is later.

40 C.F.R. § 60.5410a(h). The period ends no later than one year after the initial startup date or no later than one year after August 2, 2016. 40 C.F.R. § 60.5410a.

57.     Within 90 days after the end of the initial compliance period, owners and operators must submit an initial annual report that includes the identification and location of each storage vessel affected facility constructed, modified, or reconstructed during the reporting period, documentation of the VOC emission rate determination, records of deviations in cases where the storage vessel affected facility was not operated in compliance with the requirements specified in 40 C.F.R. §§ 60.5395a, 60.5411a, 60.5412a, and 60.5413a, as applicable, and a statement indicating requirements specified in 40 C.F.R. § 60.5410a(h)(2) and (3) have been met. 40 C.F.R. §§ 60.5410a(h)(5), 60.5420a(b), 60.5420a(c)(5)(iii).

58.     Subsequent annual reports are due to EPA no later than the same date each year as the initial annual report. 40 C.F.R. § 60.5420a(b).

59.     All information required to be submitted to EPA for NSPS Subpart OOOOa must also be submitted to the appropriate state agency to which authority has been delegated. 40 C.F.R. § 60.4(b).

60.     The State of Utah was delegated authority for implementation and enforcement of the NSPS effective February 27, 2014. 40 C.F.R. § 60.4(b)(46). *See* 79 Fed. Reg. 60,993 (Oct. 9, 2014). The NSPS Subparts OOOO and OOOOa regulations were incorporated by reference into the Utah Administrative Code and the State of Utah was delegated authority for these subparts. *See* Utah Admin. Code r. R307-210-1. This implementation and enforcement authority is concurrent with the federal authority.

## National Ambient Air Quality Standards (NAAOS) for Ozone

61.     Section 108 of the Act, 42 U.S.C. § 7408, directs EPA to identify air pollutants that "may reasonably be anticipated to endanger public health or welfare" and to issue air quality criteria for those pollutants based on "the latest scientific knowledge" about their effects on public health and the environment. These pollutants are known as "criteria pollutants."

62.     Section 109 of the Act, 42 U.S.C. § 7409, requires EPA to establish NAAQS for criteria pollutants. The primary standard must be set at the level "requisite to protect the public health" with an adequate margin of safety, and the secondary standard is intended to protect "the public welfare." According to Section 302(h) of the Act, 42 U.S.C. § 7602(h), public welfare effects are "effects on soils, water, crops, vegetation" and other environmental impacts including, but not limited to, effects on animals, wildlife, property, and "effects on economic values."

63.     Ground-level ozone, commonly known as "smog," is one of six criteria pollutants for which EPA has promulgated national standards, due to its adverse effects on human health and the environment. Short-term exposures (1 to 3 hours) to ground-level ozone can cause acute health effects observed even at low concentrations, including temporary pulmonary inflammation. Long-term exposure (months to years) may cause permanent damage to lung tissue. Children and adults who are active outdoors are particularly susceptible to the adverse effects of exposure to ozone. *See* 73 Fed. Reg. 16,436 (Mar. 27, 2008).

64.     Ozone is not emitted directly from sources of air pollution. Ozone is a photochemical oxidant, formed when certain chemicals react with oxygen in the presence of sunlight. These chemicals—VOC and nitrogen oxides ("NOx")—are called "ozone precursors." Sources that emit ozone precursors are regulated to reduce ground-level ozone. *See* 62 Fed. Reg. 38,856 (July 18, 1997).

65.     In 2015, EPA lowered the primary and secondary NAAQS for ozone to 0.070 ppm (measured as an 8-hour average). 80 Fed. Reg. 65,292 (Oct. 26, 2015).

66.     Effective August 2018, EPA designated parts of the Uinta Basin in Utah as a marginal nonattainment area with respect to the 2015 NAAQS for 8-hour ozone. 83 Fed. Reg. 25,776, 25,837 (June 4, 2018).

## Utah State Implementation Plan (SIP)

67.     Pursuant to Section 107(a) of the Act, 42 U.S.C. § 7407(a), states are primarily responsible for ensuring attainment and maintenance of the NAAQS. States implement the NAAQS on a region-by-region basis, within air quality control regions (or "areas") throughout the state. An area with ambient air concentrations that meets the NAAQS for a particular pollutant is an "attainment" area. An area with ambient air concentrations that exceed the NAAQS is a "nonattainment" area. And an area that cannot be classified due to insufficient data is "unclassifiable."

68.     Pursuant to Section 110(a) of the Act, 42 U.S.C. § 7410(a), each state must adopt and submit to EPA for approval a plan that provides for the implementation, maintenance, and enforcement of the NAAQS for each criteria pollutant in each air quality control region within the state. This plan is known as a state implementation plan or "SIP." Section 110(a)(2)(A) of the Act, 42 U.S.C. § 7410(a)(2)(A), requires that each SIP include enforceable emissions limitations and other "control measures, means, or techniques" to ensure attainment of the NAAQS.

69.     Pursuant to Section 110(c)(3) of the Act, 42 U.S.C. § 7410(c)(3), after enforceable state emission limitations are approved by EPA, these SIP provisions are federally enforceable under Sections 113(a) and (b) of the Act, 42 U.S.C. § 7413(a) and (b). *See* 40 C.F.R § 52.23.

70.     As required by Section 110(a) of the Act, 42 U.S.C. § 7410(a), the State of Utah has periodically adopted regulations to provide for the implementation, maintenance, and enforcement of the ozone NAAQS.

71.     Parts of the Uinta Basin in Utah are currently classified as a marginal nonattainment area for 2015 NAAQS for 8-hour ozone. 83 Fed. Reg. at 25,837. Under this classification, the State of Utah was required to submit the following SIP elements: (i) 2017 baseline emissions inventory; (ii) NSR program certification; and (iii) major source emissions statements. 42 U.S.C. § 7511a(a).

72.     The State of Utah has satisfied all these SIP elements by submitting the 2017 emissions inventory in August of 2020, the NSR program certification on July 29, 2021, and the major source emissions statements on October 28, 2020.

**Approval Orders Issued Through Utah's SIP-Approved Permitting Process**

73.     The State of Utah requires all potential sources of air pollution, unless exempt by its regulations, to submit a notice of intent and obtain an Approval Order ("AO") prior to construction, modification, or relocation. *See* Utah Admin. Code r. R307-401.

74.     EPA approved the State of Utah's permitting program at Utah Administrative Code r. R307-401 into Utah's SIP minor new source review program. *See* 79 Fed. Reg. 7,072 (Feb. 6, 2014). Requirements in AOs are therefore federally enforceable. *See* 40 C.F.R § 52.23.

75.     UDAQ issued AOs to EP Energy for several oil and natural gas production facilities in the Uinta Basin in Utah. Relevant AO numbers are listed in the table below and were in effect at all times pertinent to this Complaint.

| Table 1: Approval Order Numbers Per Facility | |
|---|---|
| **Facility Name** | **AO Number** |
| Chestnut 3-17C4 | DAQE-AN150080002-18 |
| DWR 3-22C6 | DAQE-AN144720002-12 |
| El Paso 3-21B4 | DAQE-AN145360002-13 |
| El Paso 4-21B4 | DAQE-AN175360002-13 |
| Freeman 4-16B4 | DAQE-AN145370002-13 |
| Hewett 2-6C4 | DAQE-AN148970001-15 |
| Kozar 2-5C4 | DAQE-AN150670001-15 |
| Marquez 2-17C4 | DAQE-AN148980001-15 |
| Moon 2-33C4 | DAQE-AN150630003-18 |
| Moon 3-32C4 | DAQE-AN150350001-16 |
| SLB 1-35A1 | DAQE-AN149430001-15 |

76.     Condition I.5 of each AO identified in Table 1, above, requires the owners/operators of oil and natural gas production facilities, at all times, including startup, shutdown, and malfunction to the extent practicable, to operate equipment approved under an AO, including associated air pollution control equipment, in a manner consistent with good air pollution control practice for minimizing emissions.

77.     Condition II.B.2.c, II.B.1.e, or II.B.2.d of the AOs listed in Table 1, above, require owners or operators of oil and natural gas production facilities to keep storage tank thief hatches closed and latched except during tank unloading or other maintenance activities.

78.     Condition II.B.3.a of the AOs identified in Table 1, above, require an owner or operator to route all exhaust/gases/vapors/fumes from oil storage tanks and produced water storage tanks to an operating combustor at all times after startup of production.

79.     Condition II.B.3.a of the AOs for EP Energy's Chestnut 3-17C4 and Moon 2-33C4, identified in Table 1, above, require an owner or operator to route all gases, vapors, and fumes from produced water storage tanks to an operating combustor.

80.     Condition II.B.1.g of the AO identified in Table 1, above, for EP Energy's El Paso 3-21B4 facility requires an owner or operator to control emissions from oil tanks with a combustor or flare during all periods of operation.

81.     Condition II.A.2 of the AO for ULT 12-34-3-1E lists the approved installation as consisting of two (2) oil storage tanks, with a capacity of 400 barrels each.

**State of Utah Air Quality Regulations for the Oil & Gas Industry**

82.     Effective December 2014, under Utah air regulations implementing the Utah Act, all oil and natural gas exploration, production, and transmission operations, and all well production facilities, must comply with general provisions for prevention of emissions and use of good air pollution control practices. *See* Utah Admin. Code r. R307-501.

83.     "Well production facilities" include "all equipment at a single stationary source directly associated with one or more oil wells or gas wells. This equipment includes, but is not limited to, equipment used for production, extraction, recovery, lifting, stabilization, storage, separation, treating, dehydration, combustion, compression, pumping, metering, monitoring, and flowline." *Id*. r. R307-501-2(2).

84.     Utah's general provisions for oil and gas industry in the Utah air regulations implementing the Utah Act require the following:

     a.   "All crude oil, condensate, and intermediate hydrocarbon liquids collection, storage, processing and handling operations, regardless of size, shall be designed, operated and maintained so as to minimize emission of volatile organic compounds to the atmosphere to the extent reasonably practicable." *Id*. r. R307-501-4(1)(a).

b.   "At all times, including periods of start-up, shutdown, and malfunction, the installation and air pollution control equipment shall be maintained and operated in a manner consistent with good air pollution control practices for minimizing emissions." *Id*. r. R307-501-4(1)(b).

c.   "All air pollution control equipment shall be operated and maintained pursuant to the manufacturing specifications or equivalent to the extent practicable and consistent with technological limitations and good engineering and maintenance practices." *Id*. r. R307-501-4(2)(a).

85.   "Installation" means a "discrete process with identifiable emissions which may be part of a larger industrial plant. Pollution equipment shall not be considered a separate installation or installations." *Id*. r. R307-101-2.

86.   The provisions in Utah Air Quality Regulations for Oil and Gas Industry referenced in Paragraphs 83-85 are enforceable only by the State of Utah.

**State of Utah Permit-by-Rule (Utah PBR) Regulations**

87.   Effective March 5, 2018, well sites as defined by NSPS OOOOa, including "centralized tank batteries," are not required to obtain AOs under Utah regulations if they are not major sources as defined by R307-101-2 of the Utah Administrative Code and they are registered with the UDAQ as required by R307-505 of the Utah Administrative Code. *See* Utah Admin. Code r. R307-401-10(5).

88.   A "well site" means "one or more surface sites that are constructed for the drilling and subsequent operation of any oil well, natural gas well, or injection well." *Id.* (citing 40 C.F.R. § 60.5430a).

89. A "centralized tank battery" means a "separate tank battery surface site collecting crude oil, condensate, intermediate hydrocarbon liquids, or produced water from wells not located at the well site." *Id*. r. R307-506-2.

90. Owners or operators registering with the UDAQ under R307-505 of the Utah Administrative Code must, among other things, certify that the registered facility is in compliance with Utah Administrative Code R307-506 through R307-510. *See id*. r. R307-505-3(4). These regulations are referred to collectively as a "permit-by-rule" or "Utah PBR."

91. Thief hatches on storage vessels subject to Utah Administrative Code R307-506 "shall be kept closed and latched except during vessel unloading or other maintenance activities." *Id*. r. R307-506-4(1).

92. VOC emissions from storage vessels in operation as of January 1, 2018, with a site-wide throughput of 8,000 barrels or greater of crude oil or 2,000 barrels or greater of condensate per year on a rolling 12-month basis must be routed to a process unit where the emissions are recycled, incorporated into a product or recovered, or be routed to a VOC control device that is in compliance with R307-508 of the Utah Administrative Code. Storage vessels with combined, uncontrolled VOC emissions demonstrated to be less than 4 tons per year on a rolling 12-month basis are exempt from this requirement. *Id*. r. R307-506-4(2).

93. The provisions of Utah PBR are enforceable only by the State of Utah.

## FACTUAL BACKGROUND

94.     From at least June 25, 2018 until the present, EP Energy owned and operated the oil and natural gas production facilities identified in Claims 1-7, below, and located on the Uintah and Ouray Indian Reservation and in the State of Utah.

95.     Based on information reported by EP Energy in its annual NSPS OOOO reports, storage vessels at the following EP Energy oil and natural gas production facilities are subject to the requirements for storage vessel affected facilities in NSPS OOOO: Chestnut 3-17C4, Hewett 2-6C4, LB Ute 1-13A3, Marquez 2-17C4, Ute Tribal 3-12A3, Ute Tribal 4-34A1E, and SLB 1-35A1.

96.     In the Notice of Intent submitted by EP Energy for Kozar 2-5C4, EP Energy indicated that the storage vessels at Kozar 2-5C4 are subject to the requirements for storage vessel affected facilities in NSPS OOOO.

97.     Based on well production data reported to the Utah Division of Oil, Gas and Mining (UDOGM), EPA believes that storage vessels at the following EP Energy oil and natural gas production facilities are subject to the requirements for storage vessel affected facilities in NSPS OOOO: Ute Tribal 2-13A3 and Ute Tribal 2-14A3.

98.     Based on information reported by EP Energy in its annual NSPS OOOOa reports, storage vessels at the following EP Energy oil and natural gas production facilities are subject to the requirements for storage vessel affected facilities in NSPS OOOOa: Hunt 1-21B4, Moon 2-33C4, Moon 3-32C4, Murray 2-15A1E, Murray 3-22A1E, Thomas 3-4C4, and Ute Tribal 3-34A1E.

99.     In accordance with 40 C.F.R. § 60.5395a(b)(1), the storage vessels referred to in Paragraphs 95-102 are subject to the requirements for storage vessel covers at 40 C.F.R. §

60.5411a(b), and the requirements for storage vessel closed vent systems at 40 C.F.R §

60.5411a(c), because EP Energy routed the oil and produced water storage vessel emissions to a

control device to comply with the emissions reduction requirements of 40 C.F.R.

§ 60.5395a(a)(2).

100.    The following facilities are considered well production facilities, as defined in

Utah Administrative Code R307-501-2(2) and are subject to state regulations in Utah

Administrative Code R307-501-1 through R307-501-4: DWR 3-22C6, El Paso 3-21B4, El Paso

4-21B4, Freeman 4-16B4, Hewett 2-6C4, Hunt 1-21B4, Kozar 2-5C4, Marquez 2-17C4,

Marquez 2-17C4, Moon 2-33C4, Thomas 3-4C4, Ute Tribal 1-28-B4.

101.    EP Energy's Hunt 1-21B4, Thomas 3-4C4, and Ute Tribal 1-28-B4 facilities are

registered under Utah's permit-by-rule and are subject to the requirements in Utah

Administrative Code R307-506-1 through R307-506-5.

102.    Hunt 1-21B4 and storage vessels at Ute Tribal 1-28-B4 are co-registered under

the same site ID [PBR942] under Utah's permit-by-rule. According to information submitted in

the registration, the site-wide throughput is greater than or equal to 8,000 barrels of crude oil per

year on a rolling 12-month basis; therefore, the tank batteries at the Hunt 1-21B4 and Ute Tribal

1-28-B4 facilities are subject to the requirements at Utah Administrative Code R307-506-4.

**Inspection Findings**

103.    On June 25, July 28, August 1, and August 7, 2018, and May 21, August 13, and

August 14, 2019, inspectors from EPA inspected the oil and natural gas production facilities

owned and operated by EP Energy identified in Paragraphs 95-102. The June 25, 2018

inspections were conducted jointly with the Ute Indian Tribal Air Program, the May 21, 2019

inspections were conducted jointly with UDAQ, and the August 13 and 15, 2019 inspections

were conducted jointly with UDAQ for facilities under state jurisdiction and with the Ute Indian

Tribal Air Program for facilities in Indian Country.

104.    At each of EP Energy's oil and natural gas production facilities, inspectors made

OVA observations and used an IR camera to document the condition of the facility equipment

and to detect any emissions from the equipment.

105.    On June 25, 2018, EPA conducted onsite inspections at three EP Energy

oil and natural gas production facilities in the Uinta Basin. Inspections were conducted jointly

with the Ute Indian Tribal Air Program. Using OVA observations and an IR camera, EPA

observed vapors being emitted directly to the atmosphere from storage vessels, including

overflow tanks, at all three of the oil and natural gas production facilities inspected.

106.    Using OVA observations and an IR camera, inspectors observed vapors being

emitted directly to the atmosphere from storage vessels at 23 facilities that were subject to NSPS

Subpart OOOO, NSPS Subpart OOOOa, State of Utah AOs, and/or regulations in Utah

Administrative Code R307-501-1 through R307-501-4 at the time of inspection. These

observations are as follows:

     a.  On June 25, 2018, EPA conducted onsite inspections at EP Energy

        oil and natural gas production facilities in the Uinta Basin. Inspections were

        conducted jointly with the Ute Indian Tribal Air Program. Using OVA

        observations and an IR camera, EPA and the Tribe observed vapors being

        emitted directly to the atmosphere from storage vessels at three facilities:

        Murray 2-15A1E, Murray 3-22A1E, and Murray 3-27A1E.

     b.  On July 28, August 1, and August 7, 2018, EPA conducted inspections at EP

        Energy oil and natural gas production facilities in the Uinta Basin. Using OVA

observations and an IR camera, EPA observed vapors being emitted directly to the atmosphere from storage vessels at two facilities: DWR 3-22C6 and SLB 1-35A1.

c.   On May 21, 2019, EPA conducted inspections at EP Energy oil and natural gas production facilities in the Uinta Basin. Inspections were conducted jointly with UDAQ for facilities under state jurisdiction. Using OVA observations and an IR camera, EPA and UDAQ observed vapors being emitted directly to the atmosphere from storage vessels subject to the emission control requirements of NSPS OOOO, NSPS OOOOa, State of Utah AOs, State of Utah regulations in Utah Administrative Code R307-501-1 through R307-501-4, or the Utah PBR at eight facilities: Chestnut 3-17C4, Hunt 1-21B4, Marquez 2-17C4, Moon 2-33C4, Moon 3-32C4, Freeman 4-16B4, El Paso 3-21B4, Ute Tribal 1-28-B4, and El Paso 4-21B4.

d.   On August 13 and 14, 2019, EPA conducted inspections at EP Energy oil and natural gas production facilities in the Uinta Basin. Inspections were conducted jointly with UDAQ or the Ute Indian Tribal Air Quality Program. Using OVA observations and an IR camera, EPA and UDAQ observed vapors being emitted directly to the atmosphere from storage vessels at thirteen facilities: El Paso 2-21B4, Freeman 4-16B4, Hewett 2-6C4, Hunt 1-21B4, Kozar 2-5C4, Thomas 3-4C4, Ute Tribal 1-28-B4, Ute Tribal 2-13A3, Ute Tribal 2-14A3, Ute Tribal 3-13A3, El Paso 4-21B4, Kozar 2-5C4, and LB Ute 1-13A3.

107.   Using OVA observations and an IR camera, inspectors observed that combustors were not operating properly at ten facilities subject to NSPS Subpart OOOO, NSPS Subpart

OOOOa, State of Utah AOs, State of Utah regulations in Utah Administrative Code R307-501-1 through R307-501-4, or Utah PBR at the time of inspection, as evidenced by the absence of a pilot flame, absence of a heat signature, black smoke, control device switches in the "off" position, and/or unburned hydrocarbon emissions as viewed with the IR camera. The observations are as follows:

    a.   During the June 25, 2018 inspections, EPA inspectors noted that the combustor at Murray 2-15A1E was not operating and the switch was observed to be in the "off" position. No heat signature was observed from the combustor using the IR camera. After an EP Energy company representative re-lit the combustor, EPA inspectors observed continuous visible emissions (black smoke) from the combustor.

    b.   During the August 1, 2018, inspections, EPA inspectors noted that the combustor at DWR 3-22C6 did not appear to be operating as no heat signature was observed from the combustor using the IR camera.

    c.   During the May 22, 2019, inspections, EPA inspectors noted that the combustors at Moon 2-33C4 and Marquez 2-17C4 were not operating. No pilot flame was present in the combustors at either facility, and no heat signature was observed from the combustors using the IR camera.

    d.   During the August 13 and 15, 2019 inspections, EPA inspectors noted that the combustors at Hewett 2-6C4, LB Ute 1-13A3, Ute Tribal 2-13A3, Ute Tribal 2-14A3, and Ute Tribal 3-13A3 were not operating, as evidenced by the absence of a pilot flame. EPA inspectors also observed visible emissions (black smoke) from the combustor at Ute Tribal 3-34A1E.

**CLAIMS FOR RELIEF**

<u>**Claim 1**</u>

**Violations of NSPS Subpart OOOO in the State of Utah**

108.     Paragraphs 1 through 107 are incorporated herein by reference.

109.     Paragraphs 108 through 120 are alleged jointly by the United States and the State

of Utah.

110.     The storage vessels at the following oil and natural gas production facility are

subject to requirements for storage vessel affected facilities in NSPS Subpart OOOO: Kozar 2-

5C4. The production startup dates and initial reporting deadlines for this facility are set forth in

the following Table 2:

| Table 2: Production Startup and Initial Reporting Deadlines for Claim 1 NSPS OOOO Facilities | | |
|---|---|---|
| **Storage Vessel Affected Facility** | **Production Startup** | **Initial Report Deadline** |
| Kozar 2-5C4 | 3/27/2014 | 8/24/2014 |

111.     From the initial report deadline listed on Table 2, above, until the present, EP

Energy failed to submit initial or annual reports containing the required information for storage

vessel affected facilities at the Kozar 2-5C4 facility, in violation of 40 C.F.R. § 60.5420(b).

112.     The storage vessels at the following three oil and natural gas production facilities

are subject to requirements for storage vessel affected facilities in NSPS Subpart OOOO: Hewett

2-6C4, Marquez 2-17C4, and SLB 1-35A1.

113.     From at least the inspection dates listed in Table 3, below, until the present, EP

Energy violated and on information and belief continues to violate the storage vessel cover

requirements of 40 C.F.R. § 60.5411(b) at Hewett 2-6C4, Marquez 2-17C4, and SLB 1-35A1

because the covers and all openings on the covers (e.g., access hatches and pressure relief valves) do not form a continuous impermeable barrier over the entire surface area of the liquid in the storage vessel, as required by 40 C.F.R. § 60.5411(b)(1), the storage vessel cover openings are not secured in a closed, sealed position, as required by 40 C.F.R. § 60.5411(b)(2), or the storage vessel thief hatches are not maintained and operated to ensure that the lid remains property seated, as required by 40 C.F.R. § 60.5411(b)(3).

| Table 3: Dates of Facility Inspections for Claim 1 | |
| --- | --- |
| **Facility Name** | **Inspection Date** |
| Hewett 2-6C4 | August 14, 2019 |
| Marquez 2-17C4 | May 21, 2019 |
| SLB 1-35A1 | August 7, 2018 |

114.    From at least the inspection dates listed in Table 3, above, until the present, EP Energy violated and on information and belief continues to violate the storage vessel closed vent system requirements of 40 C.F.R. § 60.5411(c) at Hewett 2-6C4, Marquez 2-17C4, and SLB 1-35A1 because the closed vent systems are not designed to route all gases, vapors, and fumes emitted from the material in the storage vessel to a control device that meets the requirements specified in § 60.5412 (d), or to a process, as required by 40 C.F.R. § 60.5411(c)(1), and the closed vent systems are not designed and operated with no detectable emissions as determined using OVA inspections, as required by 40 C.F.R. § 60.5411(c)(2).

115.    From at least the inspection dates listed in Table 3, above, until the present, EP Energy has violated and on information and belief continues to violate the standards for storage vessel affected facilities at 40 C.F.R. § 60.5395(e)(1) at the Hewett 2-6C4, Marquez 2-17C4, and

SLB 1-35A1facilities by failing to comply with 40 C.F.R. § 60.5411(b) and the storage vessel closed vent system requirements of 40 C.F.R. § 60.5411(c).

116.    From at least the inspection dates listed in Table 3, above, until corrective actions were performed on or around September 16, 2019 (Hewett 2-6C4) and June 26, 2019 (Marquez 2-17C4), EP Energy failed to operate a continuous burning pilot flame in the combustors at the Hewett 2-6C4 and Marquez 2-17C4 facilities, in violation of the control device requirements for storage vessel affected facilities at 40 C.F.R. § 60.5412(d)(1)(ii) and the continuous compliance requirements for combustion control devices tested by the manufacturer at 40 C.F.R. § 60.5413(e)(2).

117.    From at least the inspection dates listed in Table 3, above, until the present, EP Energy failed and on information and belief continues to fail to maintain and operate its storage vessel affected facilities and associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions at the Hewett 2-6C4, Marquez 2-17C4, and SLB 1-35A1 facilities, in violation of the requirements at 40 C.F.R. § 60.5370(b).

118.    Each of the violations alleged in Paragraphs 111 through **Error! Reference source not found.** are violations of Section 111 of the Act, 42 U.S.C. § 7411(e).

119.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b) and 40 C.F.R. § 19.4, EP Energy is liable for civil penalties of up to $102,638 per day for each violation that occurred after November 2, 2015.

120.    Pursuant to Section 19-2-115 of the Utah Act, Utah Code Ann. § 19-2-115(2)(a), EP Energy is liable for civil penalties of up to $10,000 per day for each violation.

## Claim 2

### Violations of NSPS Subpart OOOOa in the State of Utah

121.    Paragraphs 1 through 120 are incorporated herein by reference.

122.    Paragraphs 121 through 131 are alleged jointly by the United States and the State of Utah.

123.    Storage vessels at the following four oil and natural gas production facilities in the State of Utah are subject to requirements for storage vessel affected facilities in NSPS Subpart OOOOa: Hunt 1-21B4, Moon 2-33C4, Moon 3-32C4, and Thomas 3-4C4.

124.    From at least the inspection dates listed in Table 4, below, until the present, EP Energy violated and on information and belief continues to violate the storage vessel cover requirements of 40 C.F.R. § 60.5411a(b) at Hunt 1-21B4, Moon 2-33C4, Moon 3-32C4, and Thomas 3-4C4 because the covers and/or openings on the covers (e.g., access hatches and pressure relief valves) did not form a continuous impermeable barrier over the entire surface area of the liquid in the storage vessel, as required by 40 C.F.R. § 60.5411a(b)(1); the storage vessel cover openings were not secured in a closed, sealed position, as required by 40 C.F.R. § 60.5411a(b)(2); and/or the storage vessel thief hatches were not maintained and operated to ensure that the lid remains property seated and sealed under normal operating conditions, including such times when working, standing/breathing, and flash emissions are generated, as required by 40 C.F.R. § 60.5411a(b)(3).

| Table 4: Dates of Facility Inspections for Claim 2 | |
|---|---|
| **Facility Name** | **Inspection Date** |
| Hunt 1-21B4 | May 21, 2019 and August 14, 2019 |
| Moon 2-33C4 | May 21, 2019 |
| Moon 3-32C4 | May 21, 2019 |
| Thomas 3-4C4 | August 14, 2019 |

125.   By failing to comply with the storage vessel closed vent system requirements of 40 C.F.R. § 60.5411a(b) as set forth in Paragraph 124 at Hunt 1-21B4, Moon 2-33C4, Moon 3-32C4, and Thomas 3-4C4, EP Energy violated the VOC standards for storage vessel affected facilities set forth at 40 C.F.R. § 60.5395a(b)(1).

126.   From at least the inspection dates listed on Table 4, above, to the present, EP Energy violated and on information and belief continues to violate the storage vessel closed vent system requirements of 40 C.F.R. § 60.5411a(c) at Hunt 1-21B4, Moon 2-33C4, Moon 3-32C4, and Thomas 3-4C4 because the closed vent systems are not designed to route all gases, vapors, and fumes emitted from the material in the storage vessel to a control device that meets the requirements specified in § 60.5412a(d), or to a process, as required by 40 C.F.R. § 60.5411a(c)(1), and the closed vent systems are not designed and operated with no detectable emissions as determined using OVA inspections, as required by 40 C.F.R. § 60.5411a(c)(2).

127.   From at least the inspection date listed on Table 4, above, until corrective actions were performed on or around June 26, 2019, EP Energy failed to operate a continuous burning pilot flame in the combustors at the Moon 2-33C4 facility in violation of the control device

requirements for storage vessel affected facilities at 40 C.F.R. § 60.5412a(d)(1)(ii) and the

continuous compliance for combustion devices tested by the manufacturer at 40 C.F.R.

§ 60.5413a(e)(2).

128.    From at least the inspection dates listed on Table 4, above, to the present, EP

Energy failed to maintain and operate its storage vessel affected facilities and associated air

pollution control equipment in a manner consistent with good air pollution control practice for

minimizing emissions at the Hunt 1-21B4, Moon 2-33C4, Moon 3-32C4, and Thomas 3-4C4

facilities, in violation of the requirements at 40 C.F.R. § 60.5370a(b).

129.    Each of the violations alleged in Paragraphs 123 through 128 are violations of

Section 111 of the Act, 42 U.S.C. § 7411(e).

130.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b) and 40 C.F.R. § 19.4,

EP Energy is liable for civil penalties of up to $102,638 per day for each violation that occurred

after November 2, 2015.

131.    Pursuant to Section 19-2-115 of the Utah Act, Utah Code Ann. § 19-2-115(2)(a),

EP Energy is liable for civil penalties of up to $10,000 per day for each violation.

## Claim 3

### Violations of State of Utah Approval Orders

132.    Paragraphs 1 through 131 are incorporated herein by reference.

133.    Paragraphs 132 through 139 are alleged jointly by the United States and the State

of Utah.

134.    From at least the inspection dates listed below in Table 5 until the present, EP

Energy violated and on information and belief continues to violate Condition I.5 of the AOs

issued for the Chestnut 3-17C4, DWR 3-22C6, El Paso 3-21B4, El Paso 4-21B4, Freeman 4-

16B4, Hewett 2-6C4, Kozar 2-5C4, Marquez 2-17C4, Moon 2-33C4, Moon 3-32C4, and SLB 1-35A1  facilities by failing to operate equipment approved under an AO (oil storage tanks, produced water storage tanks, or overflow tanks), including associated air pollution control equipment, in a manner consistent with good air pollution control practice for minimizing emissions.

| Table 5. Facility Inspection Dates for Claim 3 | |
|---|---|
| **Facility Name** | **Date of Inspection** |
| Chestnut 3-17C4 | May 21, 2019 |
| DWR 3-22C6 | August 1, 2018 |
| El Paso 3-21B4 | May 21, 2019 and August 14, 2019 |
| El Paso 4-21B4 | May 21, 2019 and August 14, 2019 |
| Freeman 4-16B4 | May 21, 2019 and August 14, 2019 |
| Hewett 2-6C4 | August 14, 2019 |
| Kozar 2-5C4 | August 14, 2019 |
| Marquez 2-17C4 | May 21, 2019 |
| Moon 2-33C4 | May 21, 2019 |
| Moon 3-32C4 | May 21, 2019 |
| SLB 1-35A1 | August 7, 2018 |

135.    From at least the dates of inspection listed in Table 5, above, until the present, EP Energy violated and on information and belief continues to violate Conditions II.B.2.c, II.B.1.e, or II.B.2.d of the AOs issued for the Chestnut 3-17C4, El Paso 3-21B4, El Paso 4-21B4, Freeman 4-16B4, Hewett 2-6C4, Marquez 2-17C4, Moon 2-33C4, Moon 3-32C4, and

SLB 1-35A1 facilities by failing to keep storage tank thief hatches closed and latched or sealed except during tank unloading or other maintenance activities.

136.    From at least the dates of inspection listed in Table 5, above, until the present, EP Energy violated and on information and belief continues to violate Condition II.B.3.a of AOs issued for the Chestnut 3-17C4, Hewett 2-6C4, Marquez 2-17C4, Moon 2-33C4, Moon 3-32C4, and SLB 1-35A1 facilities by failing to route all gas/vapors from oil or produced water storage tanks to an operating combustor/flare.

137.    From at least the dates of inspection listed in Table 5, above, until the present, EP Energy violated and on information and belief continues to violate Condition II.B.1.g of the AO issued for the El Paso 3-21B4 facility by failing to control emissions from crude oil tanks with a combustor/flare during all periods of operation.

138.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b) and 40 C.F.R. § 19.4, EP Energy is liable for civil penalties of up to $102,638 per day for each violation that occurred after November 2, 2015.

139.    Pursuant to Section 19-2-115 of the Utah Act, Utah Code Ann. § 19-2-115(2)(a), EP Energy is liable for civil penalties of up to $10,000 per day for each violation.

## Claim 4

### Violations of NSPS Subpart OOOO in Indian Country

140.    Paragraphs 1 through 139 are incorporated herein by reference.

141.    Paragraphs 140 through 150 are alleged solely by the United States because these facilities are located on Indian Country.

142.    The storage vessels at the following two oil and natural gas production facilities are subject to requirements for storage vessel affected facilities in NSPS Subpart OOOO: Ute

Tribal 2-13A3 and Ute Tribal 2-14A3. The production startup dates and initial reporting

deadlines for these two facilities are set forth in the following Table 6:

| Table 6: Production Startup and Initial Reporting Deadlines for Claim 4 NSPS OOOO Facilities | | |
|---|---|---|
| Storage Vessel Affected Facility | Production Startup | Initial Report Deadline |
| Ute Tribal 2-13A3 | 8/4/2013 | 7/14/2014 |
| Ute Tribal 2-14A3 | 7/19/2013 | 7/14/2014 |

143.    From the initial reporting deadline in Table 6 until the present, EP Energy failed

to submit initial or annual reports containing the required information for storage vessel affected

facilities at the Ute Tribal 2-13A3 and Ute Tribal 2-14A3 facilities, in violation of 40 C.F.R. §

60.5420(b).

144.    Storage vessels at the following five oil and natural gas production facilities on

the Uintah and Ouray Reservation are subject to requirements for storage vessel affected

facilities in NSPS Subpart OOOO: LB Ute 1-13A3, Ute Tribal 2-13A3, Ute Tribal 2-14A3, Ute

Tribal 3-13A3, and Ute Tribal 4-34A1E.

| Table 7: Facility Inspection Dates for Claim 4 | |
|---|---|
| Storage Vessel Affected Facility Name | Date of Inspection |
| LB Ute 1-13A3 | August 13, 2019 |
| Ute Tribal 2-13A3 | August 13, 2019 |
| Ute Tribal 2-14A3 | August 13, 2019 |
| Ute Tribal 3-13A3 | August 13, 2019 |
| Ute Tribal 4-34A1E | August 13, 2019 |

145.     From at least the date of inspections listed on Table 7, above, until the present,

EP Energy violated and on information and belief continues to violate the storage vessel cover

requirements of 40 C.F.R. § 60.5411(b) at the Ute Tribal 2-13A3, Ute Tribal 2-14A3, Ute Tribal

3-13A3, and Ute Tribal 4-34A1E facilities because the covers and all openings on the covers

(e.g., access hatches and pressure relief valves) do not form a continuous impermeable barrier

over the entire surface area of the liquid in the storage vessel, as required by 40 C.F.R. §

60.5411(b)(1), the storage vessel cover openings are not secured in a closed, sealed position, as

required by 40 C.F.R. § 60.5411(b)(2), or the storage vessel thief hatches are not maintained and

operated to ensure that the lid remains property seated, as required by 40 C.F.R. § 60.5411(b)(3).

146.     From at least the date of inspections listed on Table 7, above, until the present, EP

Energy violated or continues to violate the storage vessel closed vent system requirements of 40

C.F.R. § 60.5411(c) at the Ute Tribal 2-13A3, Ute Tribal 2-14A3, Ute Tribal 3-13A3, and Ute

Tribal 4-34A1E facilities because the closed vent systems are not designed to route all gases,

vapors, and fumes emitted from the material in the storage vessel to a control device that meets

the requirements specified in 40 C.F.R. § 60.5412 (d), or to a process, as required by 40 C.F.R.

§ 60.5411(c)(1), and the closed vent systems are not designed and operated with no detectable

emissions as determined using OVA inspections, as required by 40 C.F.R. § 60.5411(c)(2).

147.     From at least the date of inspections listed on Table 7, above, until the present, EP

Energy violated and on information and belief continues to violate the standards for storage

vessel affected facilities at 40 C.F.R. § 60.5395(e)(1) at Ute Tribal 2-13A3, Ute Tribal 2-14A3,

Ute Tribal 3-13A3, and Ute Tribal 4-34A1E by failing to comply with the storage vessel

cover requirements of 40 C.F.R. § 60.5411(b) and the storage vessel closed vent system requirements of 40 C.F.R. § 60.5411(c).

148.    From at least the date of inspections listed on Table 7, above, until the present, EP Energy failed and on information and belief continues to fail to operate a continuous burning pilot flame in the combustors at the LB Ute 1-13A3, Ute Tribal 2-13A3, Ute Tribal 2-14A3, and Ute Tribal 3-13A3 facilities, in violation of the control device requirements for storage vessel affected facilities at 40 C.F.R. § 60.5412(d)(1)(ii) and the continuous compliance requirements for combustion control devices tested by the manufacturer at 40 C.F.R. § 60.5413(e)(2).

149.    From at least the date of inspections listed on Table 7, above, until corrective actions were performed on or around September 15, 2019 (LB Ute 1-13A3), September 16, 2019 (Ute Tribal 2-13A3, Ute Tribal 2-14A3), and September 3, 2019 (Ute Tribal 3-13A2), EP Energy failed and on information and belief continues to fail to maintain and operate its storage vessel affected facilities and associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions at the LB Ute 1-13A3, Ute Tribal 2-13A3, Ute Tribal 2-14A3, Ute Tribal 3-13A3, and Ute Tribal 4-34A1E facilities, in violation of the requirements at 40 C.F.R. § 60.5370(b).

150.    Pursuant to Section 113(b) of the Act, 42 U.S.C. §7413(b) and 40 C.F.R. § 19.4, EP Energy is liable of up to $102,638 per day for each violation that occurred after November 2, 2015.

**Claim 5**

**Violations of NSPS Subpart OOOOa in Indian Country**

151.     Paragraphs 1 through 150 are incorporated herein by reference.

152.     Paragraphs 151 through 160 are alleged solely by the United States because these

facilities are located in Indian Country.

153.     Storage vessels at the following three oil and natural gas production facilities on

the Uintah and Ouray Reservation are subject to requirements for storage vessel affected

facilities in NSPS Subpart OOOOa: Murray 2-15A1E, Murray 3-27A1E, and Ute Tribal 3-

34A1E.

| Table 8: Facility Inspection Dates for Claim 5 | |
|---|---|
| **Storage Vessel Affected Facility Name** | **Date of Inspection** |
| Murray 2-15A1E | June 25, 2018 |
| Murray 3-27A1E | June 25, 2018 |
| Ute Tribal 3-34A1E | August 13, 2019 |

154.     From at least the date of inspection listed on Table 8, above, until the present, EP

Energy violated the storage vessel cover requirements of 40 C.F.R. § 60.5411a(b) at the Murray

2-15A1E facility because the covers and/or openings on the covers (e.g., access hatches and

pressure relief valves) did not form a continuous impermeable barrier over the entire surface area

of the liquid in the storage vessel, as required by 40 C.F.R. § 60.5411a(b)(1); the storage vessel

cover openings were not secured in a closed, sealed position, as required by 40 C.F.R. §

60.5411a(b)(2); or the storage vessel thief hatches were not maintained and operated to ensure

that the lid remains property seated and sealed under normal operating conditions, including such

times when working, standing/breathing, and flash emissions are generated, as required by 40 C.F.R. § 60.5411a(b)(3).

155.    From at least the date of inspection listed on Table 8, above, until the present, EP Energy violated and on information and belief continues to violate the storage vessel closed vent system requirements of 40 C.F.R. § 60.5411a(c) at the Murray 2-15A1E facility because the closed vent systems are not designed to route all gases, vapors, and fumes emitted from the material in the storage vessel to a control device that meets the requirements specified in 40 C.F.R. § 60.5412a (d), or to a process, as required by 40 C.F.R. § 60.5411a(c)(1), and the closed vent systems are not designed and operated with no detectable emissions as determined using OVA inspections, as required by 40 C.F.R. § 60.5411a(c)(2).

156.    By failing to comply with the storage vessel closed vent system requirements of 40 C.F.R. § 60.5411a(b) for the Murray 2-15A1E facility, EP Energy violated the VOC standards for storage vessel affected facilities set forth at 40 C.F.R. § 60.5395a(b)(1).

157.    From at least the relevant inspection dates listed on Table 8, above, until corrective actions were performed on or around July 20, 2018 (Murray 2-15A1E) and July 16, 2018 (Murray 3-27A1E), EP Energy failed to operate a continuous burning pilot flames in the combustors at the Murray 2-15A1E and Murray 3-27A1E facilities, in violation of the control device requirements for storage vessel affected facilities set forth in 40 C.F.R. §§ 60.5412a(d)(1)(ii) or 60.5413a(e)(2).

158.    From at least the relevant date of inspection listed in Table 8, above, until corrective actions were performed on or around July 20, 2018 (Murray 2-15A1E) and July 16, 2018 (Murray 3-27A1E), EP Energy failed to operate the control device at the Murray 3-27A1E facility without visible emissions as determined by Method 22 for a period exceeding one minute

in a 15-minute period and therefore violated the storage vessel control device requirements at 40 C.F.R. § 60.5412a(d)(1)(iii) and the continuous compliance requirement for combustion control devices tested by the manufacturer at 40 C.F.R. § 60.5413a(e)(3).

159.    From at least the inspection dates listed in Table 8, above, to the present, EP Energy failed to maintain and operate the Murray 2-15A1E, Murray 3-27A1E, and Ute Tribal 3-34A1E facilities and associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions, in violation of the requirements at 40 C.F.R. § 60.5370a(b).

160.    Each of the violations alleged in Paragraphs 154 through 1589 are violations of Section 111 of the Act, 42 U.S.C. § 7411(e).

161.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b) and 40 C.F.R. § 19.4, EP Energy is liable for civil penalties of up to $102,638 per day for each violation that occurred after November 2, 2015.

## Claim 6

### Violations of Utah Air Quality Regulations for the Oil and Gas Industry

162.    Paragraphs 1 through 161 are incorporated herein by reference.

163.    Paragraphs 162 through 167 are alleged solely by the State of Utah because they solely address violations of state regulations.

164.    The following thirteen facilities are subject to Utah air quality regulations for the oil and gas industry in Utah Administrative Code R307-501-1 through R307-501-4: DWR 3-22C6, El Paso 3-21B4, El Paso 4-21B4, Freeman 4-16B4, Hewett 2-6C4, Hunt 1-21B4, Kozar 2-

5C4, Marquez 2-17C4, Moon 2-33C4, Moon 3-32C4, Thomas 3-4C4, Ute Tribal 1-28-B4, and

SLB 1-35A1. The State of Utah and EPA inspected these facilities on the following dates:

| Table 9: Facility Inspection Dates for Claim 6 | |
|---|---|
| **Facility Name** | **Inspection Date** |
| DWR 3-22C6 | August 1, 2018 |
| El Paso 3-21B4 | May 21, 2019 and August 14, 2019 |
| El Paso 4-21B4 | May 21, 2019 and August 14, 2019 |
| Freeman 4-16B4 | May 21, 2019 and August 14, 2019 |
| Hewett 2-6C4 | August 14, 2019 |
| Hunt 1-21B4 | May 21, 2019 and August 14, 2019 |
| Kozar 2-5C4 | August 14, 2019 |
| Marquez 2-17C4 | May 21, 2019 |
| Moon 2-33C4 | May 21, 2019 |
| Moon 3-32C4 | May 21, 2019 |
| Thomas 3-4C4 | August 14, 2019 |
| Ute Tribal 1-28-B4 | May 21, 2019 and August 14, 2019 |
| SLB 1-35A1 | August 7, 2018 |

165.    From at least the relevant dates of inspection listed in Table 9, above, until the

present, EP Energy violated and on information and belief continues to violate Utah

Administrative Code R307-501-4(1)(b) at the DWR 3-22C6, El Paso 3-21B4, El Paso 4-21B4,

Freeman 4-16B4, Hewett 2-6C4, Hunt 1-21B4, Kozar 2-5C4, Marquez 2-17C4, Moon 2-33C4,

Moon 3-32C4, Thomas 3-4C4, Ute Tribal 1-28-B4, and SLB 1-35A1facilities by failing to

maintain and operate the installation (including storage vessels or overflow tanks) or air pollution control equipment in a manner consistent with good air pollution control practices for minimizing emissions.

166.    From at least the relevant dates of inspection listed on Table 9, above, to the present, EP Energy violated and on information and belief continues to violate Utah Administrative Code r. R307-501-4(2)(a) at the DWR 3-22C6, Hewett 2-6C4, Marquez 2-17C4, and Moon 2-33C4 facilities by failing to operate and maintain air pollution control equipment pursuant to manufacturing specifications or equivalent to the extent practicable and consistent with technological limitations and good engineering and maintenance practices.

167.    Pursuant to Section 19-21-15 of the Utah Act, Utah Code Ann. § 19-2-115(2)(a), EP Energy is liable for civil penalties of up to $10,000 per day for each violation alleged in Paragraphs 165 through 166.

## Claim 7

### Violations of Utah PBR

168.    Paragraphs 1 through 167 are incorporated herein by reference.

169.    Paragraphs 168 through 173 are alleged solely by the State of Utah because they solely address violations of state regulations.

170.    The following three facilities are subject to Utah PBR regulations in Utah Administrative Code R307-506 through R307-510: Hunt 1-21B4, Thomas 3-4C4, and Ute Tribal 1-28B4. The State of Utah and EPA inspected these facilities on the following dates:

| Table 10: Facility Inspection Dates for Claim 7 | |
|---|---|
| **Facility Name** | **Inspection Date** |
| Hunt 1-21B4 | May 21, 2019 and August 14, 2019 |
| Thomas 3-4C4 | August 14, 2019 |
| Ute Tribal 1-28B4 | August 14, 2019 |

171.    From at least the relevant dates of inspection listed in Table 10, above, until the present, EP Energy violated and on information and belief continues to violate Utah Administrative Code R307-506-4(1) at the Hunt 1-21B4 facility by failing to keep thief hatches closed and latched except during vessel unloading or other maintenance activities.

172.    From at least the relevant dates of inspection listed in Table 10, above, until the present, EP Energy violated and on information and belief continues to violate Utah Administrative Code R307-506-4(2) at the Hunt 1-21B4, Thomas 3-4C4, and Ute Tribal 1-28B4 facilities by failing to route VOC emissions from storage vessels to a process unit or to a VOC control device.

173.    Pursuant to Section 19-2-115 of the Utah Act, Utah Code Ann. § 19-2-115(2)(a), EP Energy is liable for civil penalties of up to $10,000 per day for each violation alleged in Paragraphs 171 and 172.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States and the State of Utah request that this Court:

A.      Assess civil penalties against EP Energy of up to $102,638 per day for each violation occurring after EP Energy emerged from bankruptcy on October 1, 2020 for violations alleged jointly by the United States and the State of Utah and violations alleged solely by the United States;

B.      Assess civil penalties against EP Energy of up to $10,000 per day for each

violation occurring after EP Energy emerged from bankruptcy on October 1, 2020 for violations

alleged solely by the State of Utah;

C.      Award any other appropriate relief in accordance with the Act at Section 113(b),

42 U.S.C. § 7413(b) and the Utah Act at Section 19-2-115, Utah Code Ann. § 19-2-115; and

D.      Grant such other relief as the Court deems just and proper.

<div style="margin-left: 40%;">

Respectfully submitted,

FOR THE UNITED STATES, ON BEHALF
OF THE U.S. ENVIRONMENTAL
PROTECTION AGENCY

NATHANIEL DOUGLAS
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice

JAMES D. FREEMAN
Environmental Enforcement Section
U.S. Department of Justice

Attorneys for Plaintiff United States of America

</div>

FOR THE STATE OF UTAH, ON BEHALF OF
UTAH DEPARTMENT OF ENVIRONMENTAL
QUALITY, UTAH DIVISION OF AIR
QUALITY


SEAN D. REYES
Utah Attorney General



s/Marina V. Thomas
MARINA V. THOMAS
Utah Assistant Attorney General
Utah Attorney General's Office
Environment & Health Division


Attorneys for Plaintiff State of Utah