JAMES D. FREEMAN
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Telephone: (303) 844-1489
Email: james.freeman2@usdoj.gov

*Attorney for Plaintiff United States of America*

MARINA V. THOMAS
Utah Attorney General's Office
195 North 1950 West P.O. Box 140873
Salt Lake City, Utah 84114-0873
Telephone: (365) 414-0801
Email: marinathomas@agutah.gov

*Attorney for Plaintiff State of Utah*

# THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF UTAH, on behalf of the UTAH DEPARTMENT OF ENVIRONMENTAL QUALITY, UTAH DIVISION OF AIR QUALITY,<br><br>Plaintiffs,<br><br>v.<br><br>EP Energy E&P Company, L.P.,<br><br>Defendant. | Case No. 2:22-cv-00225-DBB-JCB<br><br>**UNOPPOSED MOTION TO ENTER CONSENT DECREE**<br><br>Judge David Barlow |

The United States of America and the State of Utah (Plaintiffs) respectfully request that the Court sign and enter the proposed Consent Decree lodged on March 29, 2022 (ECF No. 3-1). The Consent Decree would resolve the claims set forth in the Plaintiffs' Complaint (ECF No. 2) against EP Energy E&P Company, L.P., ("EP Energy") arising under Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), and Section 19-2-115 of the Utah Air Conservation Act, Utah Code Ann. § 19-2-115.

As required by 28 C.F.R. § 50.7 and Paragraph 111 of the Consent Decree, the United States gave notice of the lodging of the Consent Decree in the Federal Register, 87 Fed. Reg. 19,531 (April 4, 2022). The notice invited the public to comment on the Consent Decree for a period of thirty days. The United States received no comments. The United States and the State of Utah believe that the proposed Consent Decree is fair, adequate, reasonable, and consistent with the Clean Air Act and other applicable law. Accordingly, the United States and State of Utah respectfully request that this Court sign (at page 95) and enter the decree as a final order of the Court. EP Energy consents to entry of the Consent Decree. *See* Consent Decree ¶ 111.

## BACKGROUND

### A.   The Defendant and its Facilities

EP Energy is an oil and gas exploration and production company incorporated in the State of Delaware that until March 30, 2022, operated approximately 246 production facilities in Utah's Uinta Basin.[1] Oil, natural gas, and water from EP Energy's production wells flow under

---

[1] Counsel for EP Energy E&P Company, L.P. has notified the Plaintiffs that through a series of transactions, a conversion, and divisive merger occurring on and after March 30, 2022, EP Energy E&P Company, L.P.'s Utah assets and liabilities, including those addressed by the Consent Decree, are now held by Javelin Uinta, LLC. Javelin Uinta, LLC holds the rights and obligations for the Utah assets, including the obligations set forth in the Consent Decree. As EP

pressure from the well-head to a device known as a "separator." The separator separates the mixture into its constituent parts: gas goes to a sales pipeline, water goes to a produced water storage tank, and oil (commonly referred to as "condensate" or "pressurized liquids") goes to a condensate storage tank.

Emissions from the storage tanks are controlled by a vapor control system, which includes a combustor or flare. A properly designed and well-maintained vapor control system ensures that volatile organic compounds ("VOC") emissions are controlled by routing VOC vapors from the oil storage vessel through a closed vent system to a combustion device where VOC emissions are burned and destroyed at certain rate efficiencies. Alternatively, VOC emissions are routed to a process by way of a vapor recovery unit where vapors are recycled, recovered, or consumed as a product that does not vent to the atmosphere. An insufficiently designed or poorly maintained or operated vapor control system may result in VOC emissions from the vapor control system directly to the atmosphere during normal operation.

### B. Defendant's Bankruptcy

EP Energy filed for bankruptcy in 2019.[2] The United States timely filed proof of claim for $1.3 million. The State of Utah timely filed proof of claim for $296,700. The company emerged from bankruptcy in 2020 and the United States and the State of Utah subsequently resolved their proofs of claim for a cash payment of $100,000 (split evenly between the United

---

Energy E&P Company, L.P.'s obligations under the Consent Decree will – upon entry – be obligations of Javelin Uinta, LLC by operation of law, no changes to the filed Complaint or lodged Consent Decree are necessary. For simplicity's sake, this Motion refers to the Defendant by its pre-divisive merger name.

[2] *In re: EP Energy E&P Co., L.P.*, No. 19-35647 (MI) (Bankr. S.D. Tx. 2019).

States and the State of Utah). The Complaint and proposed Consent Decree address post-emergence injunctive and penalty obligations.

### C.     Statutory and Regulatory Background

EP Energy facilities must comply with New Source Performance Standards ("NSPS") for its oil and natural gas production, transmission, and distribution operations under section 111 of the Clean Air Act, which are codified at 40 C.F.R. Part 60, Subpart OOOO. EP Energy's facilities are also subject to 40 C.F.R. Part 60, Subpart OOOOa promulgated by EPA on June 3, 2016. The substantive provisions of NSPS OOOO and OOOOa that apply to storage tanks and related vapor control systems are identical. However, NSPS OOOOa, and not OOOO, applies to sources constructed, reconstructed, or modified after September 18, 2015.

NSPS OOOO and OOOOa require, among other things, that owners and operators maintain and operate facilities, including storage tanks and associated control equipment, consistent with "good air pollution control practice for minimizing emissions;" install and operate a continuous burning pilot flame on emission control devices; and operate combustion control devices with no visible emissions. 40 C.F.R. §§ 60.5370(b), 60.5412, 60.5370a(b), 60.5412a. NSPS OOOO and OOOOa also contain requirements for covers and closed vent systems on storage tanks associated with oil and natural gas production operations. *Id*. § 60.5411a. Owners and operators must "design the closed vent system to route all gases, vapors, and fumes emitted from the material in the storage vessel to a control device" and must "design and operate a closed vent system with no detectable emissions, as determined using olfactory, visual and auditory inspections." *Id*. §§ 60.5411(c), 60.5411a(c).

EP Energy is also subject to provisions of approval orders (air quality permits) issued by the State of Utah pursuant to an EPA-approved permitting program at tank systems that are part of EP Energy's oil and natural gas production operations in the Uinta Basin in Utah. EP Energy must also abide by the Utah's air quality regulations adopted under the authority of the Utah Air Conservation Act, entitled General Provisions for the Oil and Gas Industry in Utah Administrative Code r. R307-501-1 through R307-501-4 and permit-by-rule provisions in Utah Administrative Code r. R307-505 through R307-511 at facilities under the State of Utah's jurisdiction.

## D.   Claims in the Complaint

The Complaint alleges that, in 2018 and 2019, inspectors from the EPA and the Utah Division of Air Quality ("UDAQ") inspected EP Energy's well pads located in the Uinta Basin and, using an optical gas imaging infrared ("IR") camera, observed that certain storage tanks located at twenty-three well pads were emitting VOC to the atmosphere at the time of the inspections. In 2018 and 2019, inspectors from the EPA and UDAQ inspected EP Energy's well pads located in the Uinta Basin and observed nonoperational combustors or visible emissions from control devices located at ten well pads.

Based on the field inspections EPA and UDAQ determined that EP Energy had failed to comply with NSPS Subpart OOOO or OOOOa, as applicable, and federally enforceable provisions of approval orders issued by the State of Utah pursuant to an EPA-approved permitting program. The State of Utah separately determined that EP Energy had failed to comply with State-only enforceable provisions of Utah regulations.

EP Energy's failure to comply with NSPS requirements has resulted in significant excess VOC emissions, a precursor to ground-level ozone, often referred to as "smog." VOCs form ground-level ozone by reacting with sources of oxygen molecules, *e.g.*, nitrogen oxides and carbon monoxide, in the atmosphere in the presence of sunlight. Ground-level ozone is one of six criteria pollutants for which EPA has promulgated National Ambient Air Quality Standards ("NAAQS") due to its adverse effects on human health and the environment. *See* 73 Fed. Reg. 16,436 (Mar. 27, 2008)

### E. The Consent Decree

The proposed Consent Decree requires EP Energy to pay a $700,000 civil penalty, to be split evenly between the United States and the State of Utah (Consent Decree ¶¶ 39-41), implement an environmental mitigation project (*id*. at ¶ 31), and take specific action to ensure that all 246 facilities in the Uinta Basin are designed, operated and maintained in accordance with state and federal law.

The proposed Consent Decree requires EP Energy to perform an environmental mitigation project to offset the harm caused by the alleged violations. The project requires EP Energy to install emission control devices at 36 uncontrolled tank systems by December 31, 2022. EP Energy is not currently required to control the emissions from these tank systems because the construction dates of the storage vessels are prior to the effective date of applicable regulatory requirements. EP Energy estimates the cost of this project at $1.2 million. *See* App. B to Consent Decree p. B2. The project is expected to reduce VOC emissions by over 370 tons per year in the Uinta Basin non-attainment area. *Id*.

The proposed Consent Decree also requires a company-led design analysis to ensure the 246 subject facilities have adequate design and sizing of vapor control systems, the re-routing of potential emissions from so-called "overflow tanks" to the vapor control system or removal of the "overflow tanks", monthly inspections of tank systems using an IR camera, and an ongoing directed inspection and preventative maintenance program. (Consent Decree Sect. IX). These requirements will help ensure EP Energy's compliance with NSPS OOOO/OOOOa at both the inspected and non-inspected facilities.

## STANDARD OF REVIEW

In reviewing a consent decree, the district court "must ensure that the agreement is not illegal, a product of collusion, or against the public interest. The court also has the duty to decide whether the decree is fair, adequate, and reasonable before it is approved." *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991). Review of the decree "should be guided by the general principle that settlements are encouraged." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999). *See also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990). This presumption in favor of settlement "is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field." *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991). Under these circumstances, "broad deference should be afforded to EPA's expertise," *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996), and the "district court must refrain from second-guessing the executive branch." *Cannons Eng'g Corp.*, 899 F.2d at 84. *See also Colorado v. United States*, No. 1:13-CV-02532-RM-KMT, 2013 WL 6858759, at *2 (D. Colo. Dec. 30, 2013) ("[A]lthough

7

a district may not simply rubber stamp a consent decree, it must defer heavily to the parties' agreement and the EPA's expertise." (internal quotation marks omitted)). Moreover, because the consent decree represents a settlement, not a judgment after trial on the merits, it may take into account "reasonable discounts for litigation risks, time savings, and the like that may be justified." *United States v. Davis*, 261 F.3d 1, 26 (1st Cir. 2001) (citation omitted). A district court may not change the terms of the parties' agreement and must approve or deny a consent decree as a whole. *Colorado*, 937 F.2d 505 at 509-10. *See also Akzo*, 949 F.2d at 1435 (reviewing court "may not substitute [its] judgment for that of the parties").

## DISCUSSION

For the reasons described below, the proposed Consent Decree satisfies the applicable requirements for approval by the Court: (A) it is procedurally fair and is not a product of collusion; (B) it is substantively fair and reasonable; and (C) it is in the public interest and not illegal.

### A. The Consent Decree Is Procedurally Fair and Not a Product of Collusion

A proposed settlement must be both procedurally and substantively fair. *Colo. v. City & Ctny. Of Den.,* No. 10-cv-1303, 2010 WL 4318835, at *4 (D. Colo. Oct. 22, 2010). "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Id.* (quoting *Cannons Eng'g Corp.*, 899 F.2d at 86). Fairness is supported by informed, arms-length bargaining by two represented parties, including when "the Government is represented by counsel from the Department of Justice and EPA." *United States v. Weiss*, 2013 WL 5937912, at *3 (D. Colo. Nov. 6, 2013).

One indication of procedural fairness is the parties' commitment of "a considerable amount of time, effort and expense in negotiating a settlement." *Northeast Iowa Citizens for Clean Water v. AgriProcessors, Inc.,* 469 F. Supp. 2d 666, 673 (N.D. Iowa 2006). The touchstone of procedural fairness is a good-faith and arms-length bargaining among the parties. The settlement embodied in the proposed Consent Decree was reached after more than a year of arms-length negotiations. These negotiations involved representatives of the United States and the State of Utah and EP Energy's legal counsel. All Parties committed considerable time, energy, and expense to reach this settlement. This Consent Decree was fashioned by the Parties in a process that was procedurally fair from beginning to end and it is not a product of collusion.

**B.     The Consent Decree Is Substantively Fair and Reasonable**

Because substantive fairness and reasonableness are intertwined, the Plaintiffs discuss them in tandem. Substantive fairness flows from procedural fairness. *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994). "To the extent that the process was fair and full of 'adversarial vigor,' the results come before the court with a much greater assurance of substantive fairness." *Id*. (quoting *City of New York v. Exxon Corp.*, 697 F. Supp. 677, 693 (S.D.N.Y.1988)). As a preliminary matter, substantive fairness may be presumed in settlements involving "sophisticated actors." *See United States v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1088 (1st Cir. 1994) (explaining sophisticated parties "know how to protect their own interests, and they are well equipped to evaluate risks and rewards"). To be substantively fair, consent decrees must account for "concepts of corrective justice and accountability: a party should bear the cost of harm for which it is legally responsible." *United States v. ASARCO, Inc.*, 814 F. Supp. 951, 954 (D. Colo. 1993) (quoting *Cannons Eng'g Corp.*, 899 F. 2d at 87). The

"reasonableness" of a Decree may be determined in light of whether it is technically adequate, fully compensates the public for the alleged violations, and takes into consideration the risks of litigation. *Telluride Co.*, 849 F. Supp. 1400 at 1403.

This proposed Consent Decree is substantively fair. The United States, the State of Utah, and EP Energy were all represented by experienced counsel with years of experience handling Clean Air Act enforcement actions. The United States was represented in this matter by the Environmental Enforcement Section of the U.S. Department of Justice and the Office of Regional Counsel for EPA Region 8. The State of Utah was represented in this matter by the Environment Section of the Environment, Health, and Human Services Division of the Utah Attorney General's Office. Throughout the negotiations, EP Energy was represented by experienced environmental attorneys from the law firm of Holland and Hart. The Decree reflects the Parties' careful and informed assessment of the relative merits of claims and defenses, while taking into consideration the costs and risks associated with litigation.

This proposed Consent Decree reflects a reasonable settlement of the alleged violations. The Decree requires payment of a substantial civil penalty for the violations alleged. The Decree also requires EP Energy to perform an extensive environmental mitigation project and undertake significant actions to design, operate and maintain its 246 facilities in accordance with state and federal law. While the United States and the State of Utah believe they would have prevailed on their claims if litigated, litigation would not have been without risk. To avoid the relative risks and resource expenditures that litigation would have entailed, the United States, the State of Utah, and EP Energy worked towards a settlement that ensures the public is fully compensated for the environmental consequences of the alleged violations.

### C. The Consent Decree Is in the Public Interest and Is Not Illegal

The Consent Decree is consistent with the Clean Air Act and in the public interest. The purpose of the Clean Air Act is to protect and enhance the quality of the Nation's air resources so as to promote public health and welfare. 42 U.S.C. § 7401(b)(1). The role of the Court in reviewing an environmental settlement is to determine "whether the Decree comports with the goals of Congress." *Sierra Club v. COCA-COLA Corp.*, 673 F. Supp. 1555, 1556 (M.D. Fla. 1987).

This Consent Decree contains a substantial civil penalty for the alleged violations, in addition to an extensive environmental mitigation project. The Decree also requires EP Energy to comply with applicable regulations and operating permits going forward. These measures will ensure EP Energy's ongoing compliance with the Clean Air Act and will provide both specific and general deterrence for future violations. The Decree will also result in emissions reductions and benefit the public. The Decree is consistent with the purpose of the Clean Air Act and is in the public interest.

### CONCLUSION

For these reasons, the United States and the State of Utah respectfully request that the Court grant this Motion to Enter, sign the Consent Decree (ECF No. 3-1), and enter it as a final judgment in this case.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

NATHANIEL DOUGLAS
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

/s/ James D. Freeman
JAMES D. FREEMAN
Senior Attorney
Environment Enforcement Section
U.S. Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
(303) 844-1489 (PHONE)
(303) 844-1350 (FAX)
james.freeman2@doj.gov


FOR THE STATE OF UTAH, ON BEHALF OF UTAH
DEPARTMENT OF ENVIRONMENTAL QUALITY,
UTAH DIVISION OF AIR QUALITY


SEAN D. REYES
Utah Attorney General


/s/ Marina V. Thomas
MARINA V. THOMAS
Assistant Attorney General
Utah Attorney General's Office
Environment, Health, and Human Services Division